# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIMOTHY R. KUCHARSKI, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-10-382-FHS-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Timothy R. Kucharski requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As set forth below, the undersigned Magistrate Judge hereby RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on November 29, 1967, and he was forty-two years old at the time of the administrative hearing. He obtained his high school diploma and earned an associate's degree in health, physical education, and recreation. (Tr. 35). He has past relevant work as truck driver and safety coordinator. (Tr. 25). The claimant alleges he has been unable to work since December 31, 2001 because of bipolar disorder, right leg problems, diabetes, morbid obesity, sleep apnea, high blood pressure, and left arm injury. (Tr. 170).

## Procedural History

On January 10, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Michael A. Kirkpatrick conducted a hearing and determined that the claimant was not disabled in a decision dated May 20, 2010. The Appeals Council denied review, so the ALJ's decision is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments (depressive disorder, diabetes, and obesity) but retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a); 416.967(a) except that claimant was limited to no more than occasional climbing, balancing, stooping, kneeling, crouching and crawling. (Tr. 19). Further, the claimant was found to be incapable of climbing ladders, scaffolds, or ropes. (Tr. 19). Finally, the ALJ found that claimant's mental impairments limited him to simple, unskilled tasks that require no interaction with the general public. (Tr. 19). While the ALJ found that the claimant was incapable of returning to his past relevant work, he was nevertheless not disabled because there was work in the national economy that claimant could perform, *i. e.*, rotor assembler, hand suture winder, and escort driver (Tr. 26).

## Review

The claimant contends that the ALJ erred: (i) by failing to develop or weigh the medical evidence of record; (ii) by failing to properly analyze his RFC at step four with respect to both physical and mental limitations; and (iii) by finding that there was other work in the economy he could perform at step five. The undersigned finds the claimant's first contention persuasive.

The claimant was hospitalized on July 5, 2001, because of an overdose at which time he admitted to suffering from depression and feeling suicidal (Tr. 232). Upon

admission, the claimant's GAF was estimated to be about 15. (Tr. 232). The claimant reported his psychosocial stressors included moderate work stress and a "relatively chronic problem of overcommitment to taking care of elders in his community." (Tr. 232). The claimant was prescribed lithobid, kay ciel, topomax, surfak, and anusol and agreed to participate in Intensive Outpatient Program. (Tr. 233). The next record relating to claimant's mental impairments is dated February 27, 2007, at which time the claimant was diagnosed with bipolar disorder, with his most recent episode mild depressed. (Tr. 292).

On February 13, 2008, the claimant was evaluated by state consultative examiner Dr. Theresa Horton, Ph.D. The claimant's chief complaints included, *inter alia*, bipolar disorder with chronic mood swings and anger, diabetes, morbid obesity, and severe obstructive sleep apnea. (Tr. 330). The claimant also complained that he had difficulty sitting for long periods of time and that he became easily irritated and angry at others. (Tr. 330). At the time of his visit, the claimant weighed 410 pounds. (Tr. 330). The claimant told Dr. Horton that he had suicidal thoughts often and preferred not to keep sleep medication around because of those thoughts. (Tr. 331). Further, the claimant reported that "the littlest things would set him off and cause him problems at work." (Tr. 331). Dr. Horton noted that claimant had been receiving treatment at the Choctaw Nation Behavioral Health Clinic for a year (although these records, if they exist, were not included in the record), and that after his suicide attempt in 2001, he failed to follow up with mental health treatment because "he did not have insurance and felt unable to get

treatment." (Tr. 331). Dr. Horton's ultimate findings included bipolar disorder, type I, current episode depressed and she wrote that the claimant did not appear capable of adjusting into occupational settings, likely did poorly in social settings as well, and that claimant had frequent periods of sleep deprivation coupled with chronic depression and persistent suicidal thinking. (Tr. 333).

On March 14, 2008, state reviewing physician Dr. Phillip Massad, Ph.D. completed a Psychiatric Review Technique from a review of claimant's medical records. Dr. Massad found that claimant suffered from affective disorders and anxiety-related disorders (Tr. 340). With respect to the affective disorders, Dr. Massad found that claimant's depressive syndrome was characterized by anhedonia or pervasive loss of interest in almost all activities and decreased energy and noted claimant's previous diagnosis of bipolar syndrome. (Tr. 343). Dr. Massad found that claimant had moderate limitations in the categories of restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace and also noted that claimant had one or two episodes of decompensation. (Tr. 350). Dr. Massad also completed a Mental Residual Functional Capacity Assessment and found that claimant had marked limitations in the following categories: (i) ability to understand and remember detailed instructions; (ii) ability to carry out detailed instructions; and (iii) ability to interact appropriately with the general public. (Tr. 363). Further, Dr. Massad found that claimant had moderate limitations in the ability to maintain attention and concentration for extended periods. (Tr. 362).

On September 8, 2009, the claimant was again admitted for inpatient psychiatric treatment at the Oklahoma Department of Mental Health and Substance Abuse Services. (Tr. 376). At that time, the claimant reported that he was "tired and fed up and no longer wants to be around" and stated that he would do whatever it took to commit suicide. (Tr. 376). The claimant was noted to be tearful, hopeless, and helpless, and stated that "he has thoughts of self harm that have been persistent for [a week] and that they've been escalating." (Tr. 376). The claimant was diagnosed with major depression, recurrent, severe, with psychotic features, and his GAF was assessed to be 30. (Tr. 376). He was hospitalized for 10 days, and upon discharge, the claimant was supposed to follow up with outpatient treatment. (Tr. 377). Further, the claimant's GAF was assessed to be 45 upon discharge, and his medications included trazodone, tegretol, topomax, vistaril, welbutrin, geodon, and cogentin. (Tr. 378). His prognosis was "guardedly optimistic depending on follow up and compliance with treatment recommendations." (Tr. 378).

The claimant argues that the ALJ failed to properly develop or weigh the medical evidence of record, focusing his argument on the opinions of Dr. Beard and Dr. Horton. The claimant specifically argues that because the ALJ failed to request that the state consultative examiners complete medical source statements along with their examinations of the claimant, the ALJ ran afoul of applicable regulations and rulings, *i. e.*, 20 C.F.R. § 404.1519n and SSR 96-5p. Regarding Dr. Horton's findings, the ALJ nicely summarized the notes contained with her assessment, but states the following regarding his findings:

> The residual functional capacity found herein contemplates Dr. Horton's opinion that claimant would likely have difficulty adjusting to an occupational setting (indeed, claimant has now not been employed for about nine years) and accommodates Dr. Horton's opinion that claimant would likely have difficulty in social settings. With respect to residual functional capacity Dr. Horton also stated that claimant appeared to be able to perform simple and complex instructions and tasks.

Dr. Horton's report actually states that the claimant "does not currently appear capable of adjusting into occupational settings" and noted claimant's poor hygiene, frequent periods of sleep deprivation, chronic depression and persistent suicidal thinking. (Tr. 333). Dr. Horton's statement about claimant's ability to adjust to occupational settings gives the court considerable pause in light of the vocational expert's testimony that an individual with mental health impairments that prevented that person from adjusting into occupational settings would preclude employment. (Tr. 43). Further, the ALJ appears to have made his own inference regarding Dr. Horton's statement that the *reason* claimant could not adapt to an occupational setting is merely due to the fact that he has not been employed for the past nine years. (Tr. 21).

When the severe mental impairment does not meet or equal the listings, "'[t]he determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity.'" *Valdez v. Barnhart*, 62 Fed. Appx. 838, 843 (10th Cir. 2003) [unpublished opinion], *quoting* 20 C.F.R. pt.404, subpt. P, app.1, § 12.00(A). When determining a claimant's mental RFC, it is imperative that the ALJ adequately "assess the mental abilities of 'understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work

pressures in a work setting.'" *Id.* Given Dr. Horton's report and the vocational expert's testimony, the ALJ should have recontacted Dr. Horton to clarify the meaning behind her opinion that claimant would be unable to adjust into occupational settings instead of merely inferring that the reason Dr. Horton offered the opinion was because claimant had been unemployed for nine years. *See Maes v. Astrue*, 522 F.3d 1093, 1097-98 (10th Cir. 2008) ("[T]he ALJ generally must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled. . . . [W]hen the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue."), *citing* 20 C.F.R. § 404.1512(e) and *Grogan v. Barnhart*, 399 F.3d 1257, 1263-64 (10th Cir. 2005).

Instead of recontacting Dr. Horton for clarification regarding clamiant's ability to adapt to occupational settings, however, the ALJ appears to have adopted the opinion of reviewing state physician Dr. Phillip Massad, whose findings are in line with the ALJ's assessment of claimant's mental RFC. (Tr. 362-64). Dr. Massad is also the only other conflicting medical opinion regarding claimant's ability to adapt to work settings, as he checked the "not significantly limited" box next to the statements that pertain to claimant's ability to adapt to work settings. (Tr. 363). Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4. These opinions are to be treated as medical opinions from non-examining sources. *Id*. at *2. Although the ALJ is not

bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Further, "reports of *reviewing* physicians are . . . accorded less weight than those of *examining* physicians." *Talbot v. Heckler*, 814 F.2d 1456, 1463 (10th Cir. 1987) [citation omitted] [emphasis in original]. Yet, the ALJ wholly failed to even *discuss* Dr. Massad's findings, let alone discuss the weight he was assigning to Dr. Massad's findings. In the same regard, the ALJ failed to discuss why he was apparently assigning greater weight to a non-examining physician opinion over that of an examining physician. *See Miranda v. Barnhart*, 205 Fed. Appx. 638, 641 (10th Cir. 2005) (noting that the ALJ did not adequately explain why the opinion of a non-examining physician deserved greater weight than the opinion of an examining physician) [unpublished opinion].

Because the ALJ failed to properly the medical evidence of record relating to claimant's mental health impairments, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. The undersigned Magistrate Judge accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 8th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma